**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-62594-CIV-DIMITROULEAS**

SINVAL NUNES FERREIRA,

      Plaintiff,

v.

OLYMPUS TOWERS CONDOMINIUM &
MARINA, a Florida corporation d/b/a
The Olympus Association, Inc., and AW
PROFESSIONAL & MAINTENANCE
SERVICE, INC., a Florida corporation, and
SHERNELLE SINGH, CAM, individually,
and WILMA ANDRADE, individually,

      Defendants.

_____/

**DEFENDANT OLYMPUS TOWERS CONDOMINIUM & MARINA'S ANSWER,**
**AFFIRMATIVE DEFENSES, AND CROSS-CLAIM**

      **COMES NOW** the Defendant, OLYMPUS TOWERS CONDOMINIUM & MARINA ("OLYMPUS"), by and through its undersigned counsel, and pursuant to the Federal Rules of Civil Procedure, hereby files this Answer & Affirmative Defenses to the Plaintiff's Complaint, as well as a Cross- Claim against Co-Defendant AW PROFESSIONAL MAINTENANCE SERVICE, INC. ("AW MAINTENANCE"), and in support thereof, states:

1.      The allegations in Paragraph 1 of the Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

2.      OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 2 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

3.      OLYMPUS admits the allegations contained in Paragraph 3 of Plaintiff's Complaint.

4.      OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 4 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

5.      OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 5 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

6.      OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 6 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

7.      The allegations in Paragraph 7 of Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

8.      The allegations in Paragraph 8 of Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

9.      OLYMPUS admits the allegations contained in Paragraph 9 of Plaintiff's Complaint.

10.     OLYMPUS does not have sufficient information to allow it to admit or deny the allegations

contained in Paragraph 10 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

11.  OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 11 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

12.  OLYMPUS denies the allegations in Paragraph 12 of Plaintiff's Complaint.

13.  OLYMPUS denies the allegations in Paragraph 13 of the Plaintiff's Complaint.

14.  OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 14 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

15.  OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 15 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

16.  OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 16 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

17.  The allegations in Paragraph 17 of Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

18.  OLYMPUS denies the allegations in Paragraph 18 of Plaintiff's Complaint, as Plaintiff was always solely an employee of AW MAINTENANCE and AW MAINTENANCE was the

sole administrator of hiring and firings, scheduling, pay rates, and all other facets of its relationship with Plaintiff.

19.    The allegations in Paragraph of Plaintiff's Complaint are not directed at OLYMPUS, but rather are directed to Defendants AW MAINTENANCE and WILMA ANDRADE, so no response from OLYMPUS is required.  To the extent that any further response from OLYMPUS is required, OLYMPUS states that it does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 19 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

20.    OLYMPUS does not have sufficient information to allow it to admit or deny the allegations contained in Paragraph 20 of Plaintiff's Complaint, and therefore denies those allegations and demands strict proof thereof.

21.    OLYMPUS denies the allegations in Paragraph 21 of the Plaintiff's Complaint.

22.    The allegations in Paragraph 22 of Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

23.    The allegations in Paragraph 23 of Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required, OLYMPUS denies those allegations and demands strict proof thereof.

## COUNT I - RECOVERY OF UNPAID OVERTIME

24.    OLYMPUS adopts and re-alleges its responses to Paragraphs 1 through 23 above as if fully set forth herein.

25.    The allegations in Paragraph 25 of the Plaintiff's Complaint state a conclusion of law and therefore require no answer.  To the extent that any further response is required from OLYMPUS, OLYMPUS denies those allegations and demands strict proof thereof.

26.    OLYMPUS denies the allegations in Paragraph 26 of Plaintiff's Complaint.

27.    OLYMPUS denies the allegations in Paragraph 27 of Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES OF DEFENDANT OLYMPUS

28.    PLAINTIFF was at all times relevant solely and exclusively employed by the Defendant AW MAINTENANCE. OLYMPUS did not exercise control over PLAINTIFF's schedule, pay, official title or position, or any benefits and did not directly or indirectly influence the working relationship between AW MAINTENANCE and PLAINTIFF.

29.    At all times, OLYMPUS acted in good-faith in relying on its vendor AW MAINTENANCE to act in conformity with and reliance on any written regulation, order, ruling, approval, interpretation or opinion of the Department of Labor, Wage and Hour Division (even if the ruling was later rescinded).

30.    Defendant AW MAINTENANCE is contractually responsible for indemnification of OLYMPUS for any costs, expenses, fees or any liability assigned to OLYMPUS arising from any alleged actions giving rise to PLAINTIFF'S claim.

31.    To the extent that the PLAINTIFF has been compensated by Co-Defendants in this action, OLYMPUS is entitled to a setoff of the said amount against any remaining damages claimed by PLAINTIFF.

## CROSS-CLAIM COMPLAINT AGAINST CO-DEFENDANT
## AW PROFESSIONAL & MAINTENANCE SERVICE, INC.

### *Count I - Breach of Contract*

32.  This action is a cross claim for Breach of Contract against Co-Defendant AW MAINTENANCE, and is therefore within the subject matter jurisdiction of this Honorable Court.

33.  On or about September 17, 2018 OLYMPUS entered into a written agreement with AW MAINTENANCE (hereinafter "the Agreement") for the purpose of AW MAINTENANCE providing janitorial services to OLYMPUS on an independent contractor basis. A copy of said Agreement is attached hereto and incorporated herein as Exhibit "A".

34.  Pursuant to Paragraph 3.8 of the Agreement, AW MAINTENANCE was required to "provide and pay for all required labor, materials, necessary equipment, supervision, insurance and permits required to complete the Work".

35.  Paragraph 3.9 further obligates AW MAINTENANCE to "utilize adequate numbers of skilled workmen / work women who are thoroughly trained and experienced in the necessary skills and who are completely familiar with the properties administered by the Association."

36.  Additionally, Paragraphs 3.12 and 3.13 hold AM MAINTENANCE responsible for administering drug testing and conducting criminal background checks.

37.  In particular, Paragraph 3.18 states: "Contractor will perform all services as an independent contractor and will not represent itself as an employee on the Association's behalf or in the Association's name."

38.     Paragraph 6.1 of the Agreement states:

> Contractor shall supervise and direct the Work, using its best
> skill and attention and it shall be solely responsible for all
> means, methods, techniques, sequences and procedures and
> for coordinating all portions of the Work under the
> Agreement. Contractor shall at all times enforce strict
> discipline and good order among its employees and shall not
> employ on the Work any unfit person or anyone not skilled in
> the task assigned to him.

39.     to the extent that PLAINTIFF's claims herein have merit, Cross-Claim Defendant AW

MAINTENANCE materially breached the above contractual provisions of the Agreement

by failing to properly supervise and account for the work hours of PLAINTIFF and to

otherwise pay the PLAINTIFF proper overtime.

40.     As a result of the foregoing material breach of the Agreement, OLYMPUS has been damaged

in that it is now a Defendant in a Federal lawsuit seeking unpaid wages and/or overtime, and

has incurred damages in the form of costs, attorneys fees and liability exposure for

PLAINTIFF's claims herein.

41.     Pursuant to Paragraph 12 of the Agreement, "The prevailing party in any litigation arising

out of this Agreement shall be entitled to recover reasonable attorneys fees and costs at all

trial, appellate, and bankruptcy levels, to include attorney's fees pursuing attorneys fees."

42.     Based on the foregoing Paragraph of the Agreement, OLYMPUS is entitled to recovery of

all reasonable attorneys fees and costs incurred in bringing this action, DEMAND FOR

WHICH IS HEREBY MADE.

**WHEREFORE**, the Cross-Claim Plaintiff OLYMPUS respectfully requests this Honorable

Court enter a Judgment against the Cross-Claim Defendant AW MAINTENANCE for all monetary

damages resulting from its material Breach of Contract, including its own attorneys fees and costs

for this matter, and any sums awarded to the PLAINTIFF against OLYMPUS, and any other relief

the Court deems just and proper.

### Count II - Negligence

43.     This action is a cross claim for Negligence against the Cross-Defendant AW

PROFESSIONAL & MAINTENANCE SERVICE, INC., and is therefore within the subject

matter jurisdiction of this Honorable Court.

44.     On or about September 17, 2018 OLYMPUS entered into agreement with AW

MAINTENANCE for the purpose of providing janitorial services.

45.     Pursuant to said Agreement, AW MAINTENANCE had the sole obligation and duty to hire,

supervise, and compensate all persons needed to fulfill its obligation to provide professional

janitorial services.

46.     AW MAINTENANCE owed an obligation and duty to OLYMPUS to abide by all governing

State and Federal labor laws and standards when administering its cleaning personnel within

the OLYMPUS community.

47.     AW MAINTENANCE breached its duty owed to OLYMPUS to properly administer and

supervise its cleaning employees in either failing to account or otherwise pay for overtime

work performed by PLAINTIFF.

48.     As a direct and proximate result of AW MAINTENANCE's breach of its duty owed to

OLYMPUS, OLYMPUS has been damaged.

49.     The damages incurred by OLYMPUS as a result of the AW MAINTENANCE's negligence

were reasonably foreseeable.

50.     Due to the negligence of AW MAINTENANCE, OLYMPUS has been forced to retain the

services of undersigned counsel and, as a result, OLYMPUS has incurred attorneys fees and

costs.

51.     AW MAINTENANCE is responsible for all attorneys fees and costs incurred by OLYMPUS,

DEMAND FOR WHICH IS HEREBY MADE.

        **WHEREFORE**, the Cross-Claim Plaintiff OLYMPUS respectfully requests this Honorable

Court enter a Judgment against the Cross-Claim Defendant AW MAINTENANCE for all monetary

damages resulting from its Negligence, including reasonable attorneys fees and costs incurred by

OLYMPUS, and any other relief the Court deems just and proper.

### *Count III - Indemnification*

52.     This action is a cross claim for Indemnification against Cross-Claim Defendant AW

PROFESSIONAL MAINTENANCE & SERVICES, INC., and is therefore within the subject

matter jurisdiction of this Honorable Court.

53.     On or about September 17, 2018 OLYMPUS entered into a written agreement with AW

MAINTENANCE for the purpose of providing janitorial services. A copy of said Agreement

is attached hereto and incorporated herein as Exhibit "A".

54.     Section 3.7 of Exhibit "A", provides, in pertinent part, as follows:

> Contractor shall hold the Association harmless from any and
> all claims resulting from Contractor's negligent or intentional
> acts or omissions and has fully indemnify the Association for
> any losses and / or damages resulting from Contractors's
> negligent or intentional acts or omissions, including, without
> limitation, all attorney's fees, costs and expenses incurred by

the Association related thereto at all trial, appellate, and bankruptcy levels, as further provided in Section 9 of this Agreement.

55. Section 9.1 of Exhibit "A", titled "HOLD HARMLESS" provides, in pertinent part, as

follows:

> To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Association, its directors, officers, managers, and its members agents and employees from and against all claims, damages, losses, and expenses, including but not limited to attorney's fees arising out of or resulting from the performance or nonperformance of the Work, provided that any such claim, damage, loss or expense . . . . (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable. Such obligation shall not be construed to negate, abridge, or to otherwise reduce any right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph. In any and all claims against the Association or any of its members, agents or employees by any employee of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Subcontractor under worker's or workmen's compensation acts, disability benefit acts or other employee benefit acts.

56. OLYMPUS relied to its detriment on AW MAINTENANCE to properly and legally hire and

pay all janitorial service personnel, including PLAINTIFF.

57. In the event that OLYMPUS is found liable for any damages to the PLAINTIFF, AW

MAINTENANCE is responsible for reimbursement to OLYMPUS for all assessed damages,

attorneys' fees, and costs.

*Sinval Ferreira v. Olympus Towers Condominium & Marina*
*Answer / Affirmative Defenses / Cross-Claim*
*Page 11 of 11*

58.     Additionally, pursuant to Exhibit "A", AW MAINTENANCE is also liable to OLYMPUS for reimbursement of all reasonable attorneys fees and costs incurred by OLYMPUS in defending the AW MAINTENANCE action(s) as well as prosecuting the instant claim, DEMAND FOR WHICH IS HEREBY MADE.

        **WHEREFORE**, the Cross-Claim Plaintiff OLYMPUS respectfully requests this Honorable Court enter a Judgment against the Cross-Claim Defendant AW MAINTENANCE for indemnification of all monetary damages, including attorneys fees and costs, awarded to the PLAINTIFF, as well those reasonable attorneys fees and costs incurred by OLYMPUS, and any other relief the Court deems just and proper.

## <u>CERTIFICATE OF SERVICE</u>

        I HEREBY CERTIFY that a true and correct copy of the foregoing was electronically filed this 16th day of February, 2022, with the Clerk of Court using CM/ECF, which will send a notice of electronic filing to all Parties listed on the Service List.

                                        Respectfully Submitted,

                                         */s/ Gerard S. Collins*
                                        **GERARD S. COLLINS, ESQ.**
                                        Florida Bar No.: 738050
                                        Email: gcollins@kbrlegal.com
                                        Service email: litigation@kbrlegal.com
                                        **STUART M. SMITH, ESQ.**
                                        Florida Bar No.:9717
                                        Email: ssmith@kbrlegal.com
                                        Service email: litigation@kbrlegal.com

EXHIBIT "A"

## HOUSEKEEPING SERVICE AGREEMENT ("Agreement")
### Between
### Olympus Association, Inc.
### And
### AW Professional & Maintenance Service, Inc.

**THIS AGREEMENT** is made and entered into effective **September 17, 2018** by the **Olympus Association, Inc.,** (the "**Association**") a Florida corporation not-for-profit responsible for operation and maintenance of The Olympus, A Condominium (hereinafter referred to as the "**Condominium**"), located at 500 Three Islands Boulevard, Hallandale Beach, FL 33009 and **AW Professional & Maintenance Service, Inc.,** (hereinafter referred to as "**Contractor**").

1. **Description of Work:**

1.1    Contractor shall furnish and provide to the Association certain housekeeping services according to the specifications which are attached hereto as **Exhibit "A",** (the "**Work**"), in accordance with the schedule attached as **Exhibit "C"**, which is briefly described as follows: **Contractors shall furnish all necessary labor, supervision, equipment, and supplies, in accordance with the provisions, terms and conditions set forth herein to provide housekeeping services to the Condominium as required.** To the extent there are any terms in Exhibit "A" which contradict the terms contained in the text of page 1 through 10 of this Agreement ("Text"), the Text will govern, supersede, and control.

1.2    This Agreement is not for general management services and the Association has no obligation to use Contractor for such purposes. The Association may hire or currently be under contract with a licensed Community Association Manager or another Management Company to handle the day to day operations of the Association.

1.3    This Agreement may be cancelled, at any time, with or without cause by either party upon 30 days' written notice to the addresses provided in Article 11 of this Agreement.

2. **Timely Completion:**

2.1    The Work to be performed under this Agreement shall commence on **September 17, 2018 and end on September 16, 2021,** time being of the essence, and shall take place on the dates and frequency as set forth in Exhibits "A" and "C". Time is of the essence in the fulfillment of all obligations set forth in Exhibits "A" and "C".

2.2    Contractor shall provide written reports on a monthly basis, detailing the maintenance accomplishments to date, maintenance schedules for the coming month and any areas of concern encountered by the Contractor in the performance of his duties. The monthly report will also outline any recommendations of the Contractor as it relates to any change necessitated in housekeeping requirements of the Condominium.

## 3.    General Conditions:

3.1    Except if otherwise stipulated herein, the Contractor shall furnish all materials, tools, supplies, equipment and labor necessary to complete the Work described in this Agreement; furthermore, it shall be the Contractor's sole responsibility to make all arrangements for all required material procurement transportation, off-site storage and preparations.

3.2    All Work shall be performed to the highest standards and shall be in accordance with accepted standard practices in Broward County, Florida.  All Work shall be performed in accordance with all applicable laws, codes, ordinances and regulations of all local, state and federal government agencies; and it will be the responsibility of the Contractor to obtain, at its cost, all necessary certificates, permits and licenses required by such agencies and to provide the Association with copies of same.

3.3    All materials and equipment to be supplied or used by the Contractor shall be of suitable construction, composition and quality to achieve their intended function within the housekeeping maintenance program.  All personnel of Contractor shall be properly trained and licensed (if necessary) and shall conduct their work in a professional manner.

3.4    Contractor shall make payments promptly to his vendors.

3.5    The Association does not assume responsibility for any materials stored on site.

3.6    Association shall designate an individual representing the Association who will coordinate all matters pertaining to the Work's progress.  Until and unless advised to the contrary, the Association's representative shall be the **Association General Manager**.  The Contractor shall designate an individual representing the Contractor who will coordinate all matters pertaining to the Work's progress.  Until and unless advised to the contrary, the Contractor's representative shall be Wilma Andrade.

3.7    The Contractor shall protect and safeguard from harm all real and personal property of the individual unit owners and occupants, and the Common Elements, Limited Common Elements, and Association Property of the Condominium operated by the Association.  Contractor shall be solely responsible for the rectification and repair of any such damage caused directly or indirectly by its employees or agents. Contractor shall hold the Association harmless from any and all claims resulting from Contractor's negligent or intentional acts or omissions and shall fully indemnify the Association for any losses and/or damages resulting from Contractor's negligent or intentional acts or omissions including, without limitation, all attorneys' fees, costs and expenses incurred by the Association related thereto at all trial, appellate, and bankruptcy levels, as further provided in Section 9 of this Agreement.

3.8    The Contractor shall provide and pay for all required labor, materials, necessary equipment, supervision, insurance and permits required to complete the Work.

3.9    The Contractor shall utilize adequate numbers of skilled workmen/workwomen who are thoroughly trained and experienced in the necessary skills and who are completely familiar with the properties administered by the Association. Contractor shall not subcontract any of the Work or services.

3.10    The Association and/or its Agent may perform periodic inspections of the Work as further provided for herein. In the event the Association/Agent deems that the Contractor has failed to properly perform any of the Work, Association shall not be obligated to pay Contractor and shall further have the option of terminating this Agreement and paying Contractor only for Work completed and approved.

3.11    Contractor's employees and workers shall wear uniforms and a nametag or other form of identification as prescribed by the Association at all times while on the premises. Additionally, Contractor's employees shall abide by any relevant governing documents of the Association. A photograph of the Uniforms to be supplied by Contractor at Contractor's expense are attached as **Exhibit "B"**. The uniforms shall be provided to employees at no charge to the Association or the employee. Such uniforms, including but not limited to the style and color of the uniforms may not be changed without the written authorization of the Board of Directors of the Association. All uniforms must be neat and clean in appearance and worn in a professional looking manner including but not limited to shirts must be tucked into the trousers, shoes must be shined and laced, shirts and trousers must not be wrinkled). Other than their name tags or company name and logo, personnel shall not accessorize their uniforms by placing pins, badges, or affixing other items to their uniforms which are not part of the uniform.

3.12    The Association provides a drug fee work place. Before assignment to any location on the Condominium, all prospective personnel provided by Contractor must pass a drug screening test administered at Contractor's expense. The screening will include but is not limited to a urine sample test for marijuana, amphetamines, methamphetamines, cocaine, and opiates.

3.13    All personnel assigned to the Condominium must undergo a criminal background check administered at Contractor's expense. No one with a history of felonies of any type, at any time in their past or present, may be assigned to work at the Condominium. In addition no one with a conviction of a misdemeanor which involves violence to persons or property, theft, larceny, or embezzlement, may be assigned to the Condominium under this Agreement. Anyone arrested for any criminal activity, whether that activity occurred at the Condominium or elsewhere must be removed as an assigned person to the Condominium until the outcome of the criminal charges are resolved.

Housekeeping Service Agreement

3.14   A daily log will be maintained at the Condominium office where authorized staff may enter suggestions or complaints concerning areas of maintenance deficiencies. Housekeeping services will respond to every notation the log on a daily basis.

3.15   All assigned personnel shall be able to read, speak, understand and write in the English language. Specifically, assigned personnel shall be able to report emergencies to the 911 operator and each of the Association department's designated emergency responders and write clear and legible incident reports. Assigned personnel must be able to read and understand all posted warning and danger signs of potential hazards and safety instructions.

3.16   All personnel must be mentally alert and physically fit to perform the tasks which are assigned to them.

3.17   At no time shall assigned personnel use Olympus Association telephones or other equipment for non-Olympus Association or personal business without prior approval by the facility site supervisor. Unauthorized use of any Olympus Association equipment may be cause to ask that such employee be removed from assignment to the Association.

3.18   Contractor will perform all services as an independent contractor and will not represent itself as an employee or agent of the Association.  Contractor will not enter into any agreement on the Association's behalf or in the Association's name.

3.19   If applicable, Contractor shall supply the Association and its representative with the Material Safety Data Sheets (MSDS information) on all hazardous material used and brought into the building. This information shall be provided to the Association within fifteen (15) days following notification that the Contractor has been awarded the Contract. Contractor shall confine storage of materials on job site to limits approved by the Association's Representative.

3.20   Contractor shall provide a checklist (to be approved by Association) for bathrooms, service areas for each residential floor, Board Room, Palm Room, card rooms, etc. The checklist will be posted behind the door in each area and will detail the scope of the Work. Each time that area is serviced the Contractor's employee will sign-off with name, date and time of service performed.

4.   Agreement Price and Payments:

4.1   The Agreement Price for this job shall be **$40,484.00 per month**. If this Agreement does not start on the first day of the month, or if the Agreement concludes or is terminated prior to the last day of the month, the monthly amount will be prorated over the number of days in that month using the following formula [($40,484.00 divided by the total number of days in the calendar month) x number of days actually providing services in that calendar month] The Contractor shall submit an invoice to the Association on the first day of each month which will describe in reasonable detail, the

40,484
x 12
485,808

services provided and shall be payable by the 15th of each month.  Changes, additions and deductions may be made only by written Change Orders agreed by the parties. **The price is intended to include fifteen (15) cleaning persons, each working 40 hours per week, plus an additional 12 hours per week for a total of 612 hours per week and 2,652 hours per month.**

4.2     The term of this Agreement shall be for **three (3) years** as specified in paragraph 2.1 above.  However, either party may cancel at any time, with or without cause, upon thirty (30) days written notice.

4.3     The Agreement Price in Paragraph 4.1 shall not be raised during the term of the Agreement unless the changes are agreed by the parties in writing and signed by both with the same formality as this Agreement.

## 5.     Agreement Costs:

5.1     The Work includes all transportation, storage, equipment, supplies, labor and materials, necessary for a complete and functional installation, and the Work shall comply with all applicable codes and inspection requirements.

5.2     Contractor shall give all notices and comply with all laws, regulations and ordinances, and of local, state and federal authorities which are applicable to the Work, both present and future, and interpretations of such laws and regulations or ordinances by governing public authorities, regardless of whether such laws, regulations or ordinances are set forth in this Agreement.  Contractor shall furnish without any extra charge any additional materials and labor which may be required to comply with such laws, ordinances and regulations.

5.3     Contractor shall secure, in its own name and right, and pay for all permits, inspections, fees, licenses and royalties necessary for the execution of the Work to be performed.   Any services provided by Contractor which require licensure and/or certification of any nature shall only be provided by personnel/employees who hold the applicable/required licensure and/or certification.

## 6.     Supervision:

6.1     Contractor shall supervise and direct the Work, using its best skill and attention and it shall be solely responsible for all means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under the Agreement.  Contractor shall at all times enforce strict discipline and good order among its employees and shall not employ on the Work any unfit person or anyone not skilled in the task assigned to him.

6.2     Contractor shall be responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the Work.  It shall take all reasonable protections to prevent damage, injury or loss to (1) all employees and all materials and equipment to be incorporated therein, (2) all the Work and materials and

Housekeeping Service Agreement

equipment to be incorporated therein, and (3) other property at the site or adjacent thereto. It shall give all notices and comply with all applicable laws, ordinances, rules, regulations and orders of any public authority including but not limited to O.S.H.A., bearing on the safety of persons and property and their protection from damage, injury or loss.

6.3   Housekeeping Services   Management personnel will visit the Condominium on a weekly basis or more frequently, as needed.

## 7.   Insurance:

7.1   The Contractor agrees to furnish insurance coverage as follows:

Contractor hereby agrees to maintain at all times and to provide evidence of the following insurance coverages:

A. Commercial General Liability Insurance, including: (1) a minimum of $1,000,000.00 each occurrence for bodily injury and property damage, (2) a minimum of $2,000,000.00 general aggregate, (3) a minimum of $1,000,000.00 personal and advertising injury, (4) a minimum of $1,000,000.00 products and completed operations, and (5) contractual liability coverage.

B. Commercial Auto Liability Insurance, including: (1) a minimum of $1,000,000.00 combined single limit and (2) a minimum of $1,000,000.00 non-owned and hired automobile liability.

C. Workers' Compensation Insurance according to state statutory limits covering all employees or subcontractors of Contractor, with employers' liability including: (1) a minimum of $500,000.00 each accident for bodily injury, (2) a minimum of $500,000.00 each employee for bodily injury caused by disease, and (3) a minimum of $500,000.00 bodily injury caused by disease.

D. Umbrella or Excess Liability Insurance, including: (1) a minimum of $5,000,000.00 each occurrence and aggregate and (2) providing follow-form coverage over the General Liability and Employers' Liability policies.

E. Prior to the commencement of work under this Agreement, Contractor shall provide a current and original Certificate of Insurance showing the coverages outlined above. On the renewal date of any insurance policies required by this Agreement, Contractor will supply the Association with a new, original Certificate of Insurance in compliance with all terms of this Agreement. The Association and its officers, directors, and agents, shall be specifically named as an "additional insured" on the Commercial General Liability Insurance and

Housekeeping Service Agreement

Commercial Auto Liability Insurance policies.   Evidence of the additional insured designation shall be provided to the Association with the Certificate of Insurance. It is agreed by all parties that no work shall commence under the terms of this Agreement until the original Certificate of Insurance is received and approved by the Association's Board of Directors.  No later than the renewal date of any insurance policies required by this Agreement, Contractor will supply Association with an original Certificate of Insurance showing evidence of renewal coverage in compliance with the terms of this Agreement.

The Contractor agrees to supply the Association with evidence of required insurance policies (within ten (10) days of execution of this Agreement, time being of the essence) and keep said insurance policies in full force and effect during the entire course of the Work.  At least ten (10) days written notice of change or termination of insurance (time being of the essence) shall be issued to the Association prior to such change or termination of coverage.  It is understood that if any insurance cancellation notice is received, Contractor agrees to replace said policies promptly.  Contractor agrees that it shall perform no work under this Agreement during such time as said insurance policies are not in full force and effect.  The Association shall be named as an additional insured in all of the Contractor's insurance policies.  Approval of the insurance or the coverage amounts as set forth herein shall not relieve or decrease the liability of the Contractor in any way.

8.      Site Clean-up:

8.1      Contractor shall cause no waste to the Condominium Property operated by the Association or other property in the performance of this Agreement, and at all times shall keep the premises free from accumulation of waste materials or rubbish caused by its operations.  At the completion of each day's Work it shall remove all waste materials and rubbish from and about the Property as well as its tools, construction equipment, machinery and surplus materials and return all affected areas of the property to a broom clean condition.  Any costs associated with such clean up including any applicable dumping fees, are included in the Agreement Price.

8.2      If, after three days notice by the Association to any of Contractor's employees or agents at the site of the Work (or via mail), Contractor has not diligently proceeded with the clean-up as outlined in this paragraph, time being of the essence, then Association has the right to proceed with the clean-up work at the Contractor's costs and expense which, if not promptly paid by Contractor, may be deducted from any payments due from the Association to contractor.

8.3      Free, clear and unobstructed egress and ingress with respect to the Condominium Property shall be maintained by Contractor, except as agreed to by Association.

Housekeeping Service Agreement

8.4   **Number of and hours of work shall be as outlined in Exhibit "C".** Contractor shall store and park materials, equipment, tools and vehicles only in those areas designated by Association.

8.5   Contractor shall not park any vehicle among internal roadways without first providing and visible and effective safety signage.

## 9.   Hold Harmless:

9.1   To the fullest extent permitted by law, the Contractor shall indemnify and hold harmless the Association, its directors, officers, managers, and its members, agents and employees from and against all claims, damages, losses, and expenses, including but not limited to attorneys' fees arising out of or resulting from the performance or nonperformance of the Work, provided that any such claim, damage, loss or expense (1) is attributable to bodily injury, sickness, disease or death, or to injury to or destruction of tangible property (other than the Work itself) including the loss of use resulting therefrom, and (2) is caused in whole or in part by any negligent act or omission of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.  Such obligation shall not be construed to negate, abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Paragraph.  In any and all claims against the Association or any of its members, agents or employees by any employee of the Contractor, any Subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable, the indemnification shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Contractor or any Subcontractor under workers' or workmen's compensation acts, disability benefit acts or other employee benefit acts.

## 10.   Liens:

10.1   Contractor will save and keep the Association's property referred to in this Agreement or the lands upon which they are situated free from all mechanic's or construction liens and all other liens by reason of his Work or any materials or other things used by him therein.  If Contractor fails to remove such lien(s) by bonding it, Association may retain sufficient funds out of any money due or thereafter to become due by Association to Contractor to pay the same and to pay all costs incurred by reason thereof, including reasonable attorneys' fees and the cost of any lien bonds that Association may elect to obtain, and Association may pay said lien and costs out of any funds which are or which become due to Contractor and which are at any time in the possession of Association.  Invoices shall be accompanied with a detailed breakdown of the allocation of the amount required together with copies of lien Releases.

## 11.   Notices:

Notices to the parties as provided herein shall be by certified mail to the following addresses:

Housekeeping Service Agreement

As to Association:

**General Manager**
**Olympus Association, Inc.**
**500 three Islands Blvd**
**Hallandale Beach, FL 33009**

With a copy to:

**Howard J. Perl, Esq.**
**1 East Broward Blvd., Suite 1800**
**Ft. Lauderdale, FL 33301**

As to Contractor:

**AW Professional Maintenance & Services,**
**Inc.**
**P.O. Box 273150**
**Boca Raton, FL  33427**

## 12.    Attorneys' Fees:

12.1    The prevailing party in any litigation arising out of this Agreement shall be entitled to recover reasonable attorneys' fees and costs at all trial, appellate, and bankruptcy levels, to include attorney's fees pursuing attorney's fees.

## 13.    Miscellaneous:

13.1    The Association specifically covenants and agrees that it will not directly or indirectly employ, engage, retain or otherwise hire any Contractor employee, at any time during the term of this Agreement and within five (5) years after the termination of this Agreement, unless prior written consent is otherwise given by Contractor to Association.

13.2    This Agreement will not be binding until executed by all parties.

13.3    The Agreement shall be governed by the laws of the State of Florida and venue for any disputes shall be the County or Circuit Courts of Broward County, Florida, to the exclusion of all other venues.

13.4    This Agreement constitutes the sole understanding and working arrangement between the parties hereto and any changes must be agreed to, in writing, by both parties with the same formalities as this Agreement.

13.5    The Association is entering this Agreement on behalf of, and as representative for, all of its members.  Accordingly, all members of the Association shall be deemed to be primary, intended third party beneficiaries to this Agreement.

13.6    This Contract is personal to the Association and cannot be assigned by the Contractor without written approval of the Association which consent may be

Housekeeping Service Agreement

withheld.

13.7   This Agreement may be executed in counterparts, each of which is an original and all of which together constitute the same instrument.

13.8   Wherever the context shall so require, all words herein in the masculine gender shall be deemed to include the feminine or neuter gender, all singular words shall include the plural, and all plural words shall include the singular.

13.9   Time is of the essence of this Agreement. Where necessary to effectuate the intent of the parties, the terms of this Agreement shall survive completion of the Project.   This Agreement shall be construed under the laws of the State of Florida, without regard to its choice of law principles, regardless of where executed by either party

13.10 This Agreement is binding upon the parties hereto, their successors and assigns and replaces any and all prior Contracts, Agreements, or understandings between the parties hereto (whether written or oral) and cannot be modified except in a written document signed by The Association and Contractor.  **This Agreement is the joint product of the parties and shall not be more strictly construed against any party to this Contract.**

13.11   This Agreement includes all paper products and cleaning supplies, a commercial grade pressure washer and pressure broom, commercial grade carpet shampooer, commercial grade extractor, commercial grade marble polisher, commercial grade vacuum cleaners, carpet dryers, leaf blowers, commercial grade concrete washer and extractor, and commercial grade wet vacuums and any other equipment necessary to complete the Work.

13.12 The Association will provide a dedicated washer, dryer and golf cart for the Contractor's use.

13.13  There will be no additional charges by Contractor for any holiday staffing.

**SIGNATURES ON FOLLOWING PAGE**

Housekeeping Service Agreement

Signed, sealed and delivered in the presence of:

**Witnesses:**

*Alyse S Correa GM*

Print Name: *Alyse S. Correa GM*

_____

Print Name: _____

Signed, sealed and delivered in the presence of:

*Alyse S Correa GM*

Print Name: *Alyse S. Correa GM*

_____

Print Name: _____

**Olympus Association, Inc.**

By: _____ *President*

Print Name: *Lary Weintraub*

Title: *President*

**AW  Professional  Maintenance  &  Services, Inc.**

By: _____

Wilma Andrade, President

*WILMA    ANDRADE, PRESIDENT/OWNER*

# Exhibit "A"

## Services & Specifications

Contractor agrees to furnish all paper products and cleaning supplies, commercial grade pressure washer and pressure broom, commercial grade carpet shampooer, commercial grade water extractor, commercial grade marble polisher, commercial grade vacuum cleaners, carpet dryers, leaf blowers, commercial grade concrete washer and extractor, commercial grade wet vacuums and any other equipment necessary to complete the services, and all other necessary items for services as described in this Agreement and the specifications.

### SPECIFICATIONS ON FOLLOWING PAGES

## OLYMPUS CONDOMINIUM CLEANING SPECIFICATIONS

| SPECIFICATIONS *Lobby area + concierge desk* | DAILY | TWICE A WEEK | WEEKLY | MONTHLY | QUARTERLY | YEARLY |
|---|---|---|---|---|---|---|
| Wash and dry polish all glass in entry doors | X | | | | | |
| Spot clean all other glass | X | | | | | |
| Dust mop and damp mop floors | x | | | | | |
| Dust furniture, fixtures, and base boards-leather cleaner as needed. | | x | | | | |
| Vacuum walk off matts, carpet etc. | X | | | | | |
| Empty trash receptacles and remove trash to designated area | X | | | | | |
| Damp wipe and polish all trash receptacles | X | | | | | |
| Spot clean walls | X | | | | | |
| Polish brass and bright work | | | X | | | |
| Dust all base board ledges | | | x | | | |
| Dust and wipe planters & silk plants- must handle with care | | x | | | | |
| **RESTROOMS** | | | | | | |
| Clean toilet bowls and urinals including seat, cover, lid base and head | X | | | | | |
| Clean all washbasins | X | | | | | |
| Clean and polish all urinal pipes and fixtures | X | | | | | |
| Clean all mirrors and frames | X | | | | | |
| Clean and sanitize all wall surfaces and counter tops | X | | | | | |
| Spot clean all door frames, kick plates and surfaces | X | | | | | |
| Sweep, clean, and sanitize all floor surfaces | X | | | | | |
| Spot clean all partition walls | X | | | | | |
| Replenish paper towels, toilet tissue, facial tissue and soap | X | | | | | |
| Clean all diffusers and vents | X | | | | | |
| Check all floor traps and drains for debris and waste | X | | | | | |
| Wash clean all walls & stall partitions | | x | | | | |
| **PARKING GARAGE** | | | | | | |
| Police parking area for debris and remove trash | X | | | | | |
| Wipe down benches and flat ledges | | | x | | | |
| Spray down garage floor and screen filters | | | | | | |
| Wipe down exposed overhead pipes & mirrors | | | x | | | |
| **ADMINISTRATIVE OFFICE** | | | | | | |
| Dust furniture and fixtures including chairs & tables | X | | | | | |
| Dust all exposed cabinets, bookcases, & shelves | X | | | | | |
| Remove fingerprints, stains & smudges | X | | | | | |
| Empty trash receptacles and remove trash to designated area | 2x | | | | | |
| Vacuum flooring | x | | | | | |

Housekeeping Service Agreement

## OLYMPUS CONDOMINIUM CLEANING SPECIFICATIONS

| SPECIFICATIONS *Service Hallways + Custodian Breakroom* | DAILY | TWICE A WEEK | WEEKLY | MONTHLY | QUARTERLY | YEARLY |
|---|---|---|---|---|---|---|
| Sweep and or dust mop | x | | | | | |
| Dust corners and high reach areas | | | x | | | |
| Spot clean walls and doors | x | | | | | |
| Clean floors, tables, counter tops and appliances | x | | | | | |
| **LOADING DOCK TRASH ROOMS** | | | | | | |
| Move trash containers to outside holding area for trash pick up | ACCORDINGLY | TO | PICK | UP | SCHEDULE | |
| Sweep and disinfect trash rooms | ACCORDINGLY | TO | PICK | UP | SCHEDULE | |
| **ELEVATORS** | | | | | | |
| Wipe clean all walls | X | | | | | |
| Polish chrome, stainless steel and bright work | x | | | | | |
| Spot clean walls around call button removing finger prints etc. | X | | | | | |
| Sweep and mop floors | X | | | | | |
| Clean elevator tracks | Vacuum | | x | | | |
| Install and remove service elevator pads and carpet | X | | | | | |
| **COMMON CORRIDORS** | | | | | | |
| Vacuum carpet each floor | | | 3x | | | |
| Remove all abandoned trash and debris | X | | | | | |
| Dust corners, high reach areas, and base boards | | x | | | | |
| Spot clean walls and doors | | | X | | | |
| Remove recycling from each floor holding room | X | | | | | |
| Wipe clean and polish trash chute stainless steel | | | x | | | |
| Shampoo carpet each floor | | | Spot clean | | | x |
| **STAIRWELLS** | | | | | | |
| Wiped down hand rails, door handles, and kick plates, sweep | | | | x | | |
| Police stairwells removing debris | | | x | | | |
| **POOL LANDING & POOL DECK** | | | | | | |
| Wash and dry polish all glass in entry doors | X | | | | | |
| Spot clean all other glass including perimeter glass surrounding the pool and Jacuzzi | X | | | | | |
| Totally clean rest rooms daily | 2 x | | | | | |
| Dust furniture and fixtures | | | x | | | |
| Vacuum walk off matts, carpet etc. | X | | | | | |

Housekeeping Service Agreement

## OLYMPUS CONDOMINIUM CLEANING SPECIFICATIONS

| SPECIFICATIONS | DAILY | TWICE A WEEK | WEEKLY | MONTHLY | QUARTERLY | YEARLY |
|---|---|---|---|---|---|---|
| Empty trash receptacles and remove trash to designated area | X | | | | | |
| Wipe down perimeter railing and lounge chairs | | | X | | | |
| Police pool deck | X | | | | | |
| GYM | | | | | | |
| Clean gym restrooms according to restroom spec | X | | | | | |
| Wipe down glass wall and windows | X | | | | | |
| Empty trash receptacles and replace paper goods and gym wipes | X | | | | | |
| Wipe down gym equipment with designated product | X | | | | | |
| **MAIN ENTRANCE, BUILDING PERIMETER, LANDSCAPING** | | | | | | |
| Remove excess leaves & debris from walks & immediate perimeter of buildings & garage | X | | | | | |
| Police outside of the building picking up all abandoned debris | X | | | | | |
| Sweep and damp mop up to common areas | X | | | | | |
| Empty trash receptacles and remove trash to designated area | X | | | | | |
| Damp wipe and polish all trash receptacles | X | | | | | |
| | | | | | | |
| **BARBEQUE AREA** | | | | | | |
| Clean grills (power wash) | X | | | | | |
| Wipe down tables & chairs with disinfectant | X | | | | | |
| Clean sink | X | | | | | |
| Pick up trash | X | | | | | |
| Empty grease | X | | | | | |
| | | | | | | |
| **MISC** | | | | | | |
| Water annex lobby plants | X | | | | | |

Power wash walkways + pavers                                    2x

## EXHIBIT "B"
### Photograph of Uniforms



white shirt

kaki pants

# EXHIBIT "C"
## Work Hours

*Breakdown subject to change* ꟾꟾꟾ

| Title | Schedule | Daily Hours | Weekly Hours |
|-------|----------|-------------|--------------|
| Supervisor | 7AM-5PM | 10 | 50 |
| Floor Porter | 7AM-5PM | 10 | 50 |
| Porter 1 | 7AM-3:30PM | 8 | 40 |
| Porter 2 | 7AM-3:30PM | 8 | 40 |
| Porter 3 | 7AM-3:30PM | 8 | 40 |
| Porter 4 | 7AM-3:30PM | 8 | 40 |
| Porter 5 | 7AM-3:30PM | 8 | 40 |
| Porter 6 | 1:30PM-9PM | 8 | 40 |
| Porter 7 | 7AM-3:30PM | 8 | 40 |
| Porter 8 | 7AM-3:30PM | 8 | 40 |
| Porter 9 | 7AM-3:30PM | 8 | 40 |
| Porter 10 | 7AM-3:30PM | 8 | 40 |
| Porter 11 | 7AM-3:30PM | 8 | 40 |
| Porter 12 | 7AM-3:30PM | 8 | 40 |
| Porter 13 | 7AM-11PM (S-SU) | 16 | 32 |
| | **TOTAL** | 132 | 612 *Must be total* |

ACTIVE: 11315334_2

Housekeeping Service Agreement